**DeWitt OWENS, Plaintiff,**

v.

**John HAAS, Alonzo Quarles, Peter Skalkos, James J. Britt, William R. Kessler, Joseph Chotkowski, Michael Allen, Walter J. Flood and The County of Nassau, Defendants.**

**No. 77 C 668.**

United States District Court,
E. D. New York.

Sept. 12, 1978.

Philip K. Howard and Steven E. Harbour, New York City, for plaintiff.

Edward G. McCabe, County Atty. for the County of Nassau, Mineola, N. Y., for the individually named defendants.

Newman & Schlau, P. C., New York City, for the County of Nassau.

## MEMORANDUM AND ORDER

GEORGE C. PRATT, District Judge:

By motion submitted on July 20, 1978, defendant County of Nassau seeks an order granting summary judgment dismissing the complaint against it. Although the motion is captioned as one for summary judgment, the county has not filed a statement of undisputed facts pursuant to EDNY Rule 9(g), stating that it is inapplicable to this motion. Therefore, the court will consider the motion as one for judgment on the pleadings pursuant to FRCP 12(c).

According to the complaint, plaintiff is a federal prisoner who, on August 8, 1976, was transferred from federal custody to the Nassau County jail in Hicksville for the purpose of insuring his safety. The transfer was made under a general agreement between the United States and Nassau County entered into pursuant to 18 U.S.C. § 4002, under which the federal government for a fee may house federal prisoners in county facilities. The complaint alleges that on October 27, 1976, the individual corrections officers named as defendants herein inflicted serious physical injuries on the plaintiff, by "choking him and beating him with their fists about the head and body", thereby rendering him unconscious. Complaint, ¶ 15.

Seeking compensatory damages, punitive damages, and attorney's fees, plaintiff sues under 42 U.S.C. §§ 1983 & 1985, as well as directly under the fourteenth amendment, alleging violations of constitutional rights under the fifth, eighth, and fourteenth amendments. Plaintiff also claims third party beneficiary rights under the county's contract with the United States, and further asserts pendent claims of liability under state law.

The county seeks dismissal, claiming that as a municipal corporation it cannot be held responsible in this court for the alleged acts of the individual defendants.

## § 1983 CLAIM

Until recently, indeed, even when this motion was originally made, political subdivisions of a state were not considered "persons" subject to suit under § 1983. *Monroe v. Pape*, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961); *Moor v. County of Alameda*, 411 U.S. 693, 93 S.Ct. 1785, 36 L.Ed.2d 596 (1973). On June 6, 1978, however, the Supreme Court expressly overruled *Monroe v. Pape, supra,* and its progeny, insofar as they had held that a local government was not a "person" suable under § 1983. *Monell v. New York City Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). But the shield against municipal liability was only partially lifted. In *Monell*, the court specifically stated that:

[l]ocal governing bodies * * * can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where * * * the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers. Moreover, * * * local governments * * * may be sued for constitutional deprivations visited pursuant to governmental "custom" even though such a custom has not received formal approval through the body's official decisionmaking channels.

\* \* \* \* \* \*

On the other hand, * * * Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort. In particular, we conclude that a municipality cannot be held liable *solely* because it employs a tort feasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory. *Id.,* 98 S.Ct. at 2035–36 (emphasis in original)

Under *Monell's* new reading of § 1983, therefore, the governmental entity may be liable for its employees' acts, but only when "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury * * *." *Id.,* 98 S.Ct. at 2038.

In an earlier case, *Rizzo v. Goode*, 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976), the Supreme Court denied injunctive relief against city officials on a § 1983 claim involving actions of the city's police officers. The Second Circuit recently commented on that case:

> The plaintiffs * * * did not demonstrate that the random actions of the police officers were part of a concerted plan or pursuant to any departmental policy—express or otherwise. This failure to prove any "causal link" between individual incidents and the behavior of those in authority was fatal to their claim. [We are] permitting municipal liability only where the governmental entity authorizes, sanctions, or ratifies the actions of its employees * * *. *Turpin v. Mailet*, 579 F.2d 152 at 167 (CA2 1978).

Plaintiff urges that under *Monell*, a municipality's mere failure to supervise its employees would provide a basis for imposing liability, see *Monell v. Dept. of Social Services, supra*, 98 S.Ct. at 2037 n. 58; *Rizzo v. Goode, supra*, 423 U.S. at 370–71, 96 S.Ct. 598, reasoning that the county's failure to maintain an adequate prison-guard training program produces guards of the type who allegedly assaulted the plaintiff. Such a theory, however, is one step removed from the situations envisioned by *Monell*. Plaintiff asserts here not a repeated course of conduct, but only an isolated incident. He does not allege that the county was aware of any past violent propensities of the defendant corrections officers, nor does he attribute any custom or policy to the county. In short, on the pleadings before the court, there is simply no "causal link" to connect the assault on plaintiff with any sort of official county policy or custom.

Finally, in *Monell* the Supreme Court reaffirmed *Monroe v. Pape, supra*, "insofar as it holds that the doctrine of *respondeat superior* is not a basis for rendering municipalities liable under § 1983 for the constitutional torts of their employees." 98 S.Ct. at 2022 n. 7. To the extent that the complaint suggests liability under § 1983 predicated on *respondeat superior*, it therefore errs. Despite *Monell*, then, plaintiff's action against the county, insofar as it is based on § 1983, must be dismissed.

## § 1985 CLAIM

Plaintiff also seeks to hold the county liable under 42 U.S.C. § 1985. Prior to *Monell*, a § 1985 damage claim could not be maintained against a municipality because the latter was not a "person". *See Bosely v. City of Euclid*, 496 F.2d 193 (CA6 1974); *see also Weathers v. W. Yuma County School District*, 387 F.Supp. 552 (D.Colo. 1974); *Potts v. Wright*, 357 F.Supp. 215 (E.D.Pa.1973). Now, however, the Supreme Court's current reading of legislative history to classify a municipal corporation as a "person" under § 1983 presumably is equally applicable to § 1985, each of whose subdivisions proscribes conduct by "two or more persons".

Assuming without deciding that a municipal corporation is a "person" capable of entering into a conspiracy in violation of § 1985, it is nevertheless clear that plaintiff here has alleged no such conspiracy. As under § 1983, liability of a municipality for conspiracy to violate plaintiff's civil rights must derive from more than conspiratorial conduct by a low level employee. Necessarily, it must reflect an officially adopted policy or custom of the municipality. Since plaintiff here has alleged no facts which would implicate a municipal policy or custom of conspiring to violate plaintiff's rights, his claim under 42 U.S.C. § 1985 must be dismissed.

## FOURTEENTH AMENDMENT CLAIM

Plaintiff also seeks to keep the county in the action under the Second Circuit's recent decision in *Turpin v. Mailet*, 579 F.2d 152 (CA2 1978), upholding a damage claim asserted against a municipal corporation directly under the fourteenth amendment. In his concurring opinion in *Monell*, Mr. Justice Powell indicated that one of the considerations moving him to overrule the Supreme Court's interpretation of the statutory term "person" estab-

lished in *Monroe v. Pape*, was the difficulty presented by the Supreme Court's decision in *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971) in which a cause of action for damages had been implied directly from the fourth amendment. According to Justice Powell, he would rather overrule *Monroe* "than constitutionalize a cause of action against local government that Congress intended to create in 1871". *Monell, supra,* 98 S.Ct. at 2047. At least one Supreme Court Justice, therefore, resists the concept of a damage claim against a municipality directly under the fourteenth amendment.

Nevertheless, one day before the *Monell* decision, the Second Circuit in *Turpin* expressly upheld such a direct claim. In doing so, however, the Second Circuit imposed limitations on the scope of such a claim which are similar to those established by the Supreme Court in *Monell* for a claim under § 1983. According to the Second Circuit, a claim against a municipality directly under the fourteenth amendment would not lie under the doctrine of *respondeat superior, Turpin v. Mailet, supra,* at 165, would be limited "to those instances in which the municipality itself is a wrong-doer", *id.* at 168, and would arise only when the unconstitutional actions of the municipal employees are "authorized, sanctioned, or ratified by municipal officials or bodies functioning at a policy-making level". *Id.* at 164.

Plaintiff's complaint does not allege facts from which it could be reasonably inferred that the municipality itself, rather than its workers, was the wrongdoer; there are no allegations that the employees' allegedly unconstitutional actions were authorized, sanctioned, or ratified by any official functioning at a policy-making level; accordingly, plaintiff's complaint against the County of Nassau insofar as it lies directly under the fourteenth amendment must be dismissed.

### PLAINTIFF'S BREACH OF CONTRACT CLAIM

In his fourth cause of action, plaintiff seeks to recover based upon the agreement between the United States and the County of Nassau entered into pursuant to 18 U.S.C. § 4002, under which he was housed as a federal prisoner in the Nassau County jail. Plaintiff argues that under the agreement the county assumed custody of the plaintiff, and that it impliedly agreed to protect his health and safety, that by the actions of its employees the county breached the agreement, and that the county is therefore liable to plaintiff as a third-party beneficiary.

18 U.S.C. § 4002 provides in relevant part:

> For the purpose of providing suitable quarters for the safekeeping, care, and subsistence of all persons held under authority of any enactment of Congress, the Director of the Bureau of Prisons may contract * * * with the proper authorities of any State, Territory, or political subdivision thereof, for the imprisonment, subsistence, care, and proper employment of such persons.

Section 4002 does not itself imply any private right of action. *Hampton v. Holmesberg Prison Officials,* 546 F.2d 1077, 1082 (CA3 1976); *Johnson v. Lark,* 365 F.Supp. 289, 300–01 (E.D.Mo.1973). Plaintiff urges, however, that the contract entered into pursuant to this section creates rights which give him status as a third-party beneficiary. In order to properly consider that claim, this court by memorandum and order dated August 3, 1978 directed counsel for the County of Nassau to supply a copy of the contract, both to the court and to plaintiff's attorney. The county's attorney complied, and after reviewing the contract, the court can find no provisions from which plaintiff's third-party beneficiary claim might reasonably be inferred, whether the analysis is based on federal common law or New York State contract law. Accordingly, plaintiff has alleged no claim against the County of Nassau either under 18 U.S.C. § 4002 or under the agreement between the County of Nassau and the United States entered into pursuant to that section.

## PENDENT CLAIMS

Since plaintiff has no basis for a federal claim against defendant County of Nassau, his pendent state law claims against the county must also be dismissed.

## CONCLUSION

Defendant County of Nassau's motion to dismiss the complaint in its entirety insofar as it alleges any claims against the County of Nassau is granted.

SO ORDERED.